**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **ROBERTO CHAVEZ,** | ) | **Civil Action No. 7:19cv00014** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **G. BAILEY, *et al.*,** | ) | **By: Norman K. Moon** |
| **Defendants.** | ) | **Senior United States District Judge** |

In this action brought pursuant to 42 U.S.C. § 1983,[1] *pro se* Virginia inmate Roberto Chavez names a number of individual defendants. I follow the parties' lead in separating them into two groups. The first group, collectively "the Virginia Department of Corrections ("VDOC") Defendants," consists of defendants B.J. Ravizee, C.A. Manis, S. Herrick, M.K. Fleming, and D. Harris.[2] The second group, collectively "the Medical Defendants," consists of G. Bailey and R. Moore, both dentists at Wallens Ridge State Prison ("WRSP"), and K. Givens, a dental assistant at WRSP.

Chavez asserts four claims, all of which arose during the time he was incarcerated at WRSP. In the first, he alleges that defendants Bailey and Moore violated his Eighth Amendment rights by failing to provide prompt and adequate medical treatment for his significant tooth pain, which he describes as "an excruciating toothache that deprives me of sleep and makes eating unbearable [sic] painful." (Compl. 6–7, Dkt. No. 1.)[3]

---

[1] I omit internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

[2] Two additional VDOC Defendants are named in the complaint and also moved for summary judgment: H.H. Scott, who Chavez identifies as the "VDOC Deputy Director of Administration," and M. Stanford, who Chavez identifies as the "medical administrator at WRSP." Chavez claims that they are responsible for two VDOC policies that he challenges—VDOC's grievance procedure (Operating Procedure 866.1), and its dental services procedure (OP 720.6). In his opposition, though, Chavez explains why he named them as "possible defendants," but states that he "apologize[s] and releases Stanford and Scott." (*Id.*) I construe this as a request to dismiss those defendants and will grant that request without prejudice. Regardless, his allegations are insufficient to state a claim against Scott or Stanford.

[3] Page numbers refer to the numbers generated by the court's electronic case filing system.

Chavez's second claim alleges that, during a June 1, 2018 dental procedure that was ostensibly done to extract a tooth, Dr. Bailey, assisted by defendant Givens, "maliciously" and "sadistic[ally] inflicted bodily injury" to plaintiff by "intentionally caus[ing] extensive bone damage" to his teeth.  (Compl. 9.)  He contends that this "attack" was done in retaliation for his filing of a complaint against Dr. Bailey.

In his third claim, Chavez claims that a number of the defendants violated his due process and equal protection rights when they "omitted, suppressed, turn[ed] a blind eye, acquiesce[ed], and possibly tampered or destroy[ed] evidence" of the June 1 "attack."  (Compl. 13.)  He lists a number of ways in which he believes defendants tampered with evidence, including that Moore and Givens allegedly tampered with x-rays on June 26, 2018, using sophisticated software or hardware to make what he calls "shadow" x-rays, and altered the medical record of his June 26, 2018 appointment.  He alleges this was done to protect and hide Dr. Bailey's errors.  The primary focus of this claim, however, is his allegation that the remaining VDOC Defendants, with the exception of Manis, failed to properly investigate his grievance related to the June 1 procedure and failed to review and preserve a video recording of the incident.

In his last claim, Chavez claims that his Eighth and Fourteenth Amendment rights were violated by defendants Herrick and Manis.  He vaguely alleges, without additional support, that they "maintain[ed] incompetent medical procedures."  (Compl. 22.)  Herrick and Manis were the persons who responded to Chavez's grievances regarding his hostile dental treatment, and he alleges that they did so improperly and erred in denying his grievances or appeals.

Two separate motions for summary judgment are ripe and fully briefed: one was brought by the VDOC Defendants (Dkt. No. 31) and the other by the Medical Defendants (Dkt. No. 40). Upon review of the record, I conclude that both motions should be granted.

## I.   BACKGROUND

The evidence in the record includes affidavits with exhibits attached to the summary

judgment motions, Chavez's declarations in opposition to the summary judgment motion, and a

Rapid Eye video of Chavez's June 1, 2018 dental appointment.  Additionally, I treat statements

of fact in Chavez's complaint, if based on personal knowledge, as evidence in opposition to the

summary judgment motion.  *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).  Chavez's

complaint includes a number of attachments, which I also have considered.  As I must, I construe

all facts in the light most favorable to Chavez, the non-moving party.  *See Henry v. Purnell*, 652

F.3d 524, 531 (4th Cir. 2011) (en banc).

### A.   Facts Relevant to First and Second Claims—Denial of Dental Care

In May 2018, WRSP provided the services of a practicing dentist approximately three

days a week subject to scheduling availability.  Appointments were scheduled according to the

availability of the dentist and the waiting list.  During the relevant time, Dr. Bailey generally

provided dental services at WRSP approximately three days per week; Moore provided dental

services there approximately once per week.  Ms. Givens, a dental assistant, assisted the dentists

during procedures, but offering diagnoses, establishing treatment plans, and interpreting

diagnostic x-rays were all beyond the scope of her role.  (Bailey Decl. ¶ 5, Dkt. No. 41-1; Moore

Decl. ¶ 3, Dkt. No. 41-2; Givens Decl. ¶¶ 4–6, Dkt. No. 41-3.)

On May 8, 2018, Chavez filed an emergency grievance stating that he had an

excruciating toothache.[4]  Within three hours, Dr. Bailey responded and explained that his

complaint did not qualify as an emergency.  Nonetheless, Dr. Bailey reviewed Chavez's dental

record, prescribed Chavez a ten-day course of pain medication and an antibiotic, and told Chavez

---

[4]  Chavez's attempts at exhaustion are detailed in Ravizee's affidavit (Dkt. No. 32-1).  There is no need to discuss most of them because the grant of summary judgment is not based on Chavez's alleged failure to exhaust.

that he would be scheduled soon for a dental appointment.  (Bailey Decl. ¶¶ 6–7.)

Chavez alleges that he believed "soon" meant a few days, and he contends that the antibiotics exacerbated his agony and the ibuprofen provided him only with "transient relief." (Compl. 5.)  He further states that Dr. Moore was present on May 15 at the prison, but "declined" to examine or treat him.  Chavez did not learn until July, however, that he had been scheduled for a May 15 appointment and that it did not occur.  In any event, after Chavez's emergency grievance was denied and he was prescribed pain medicine and antibiotics, Chavez did not complain or again seek dental care until May 25.

On May 25, Chavez said he could not bear the agony any longer and initiated an administrative complaint against Bailey for disregarding his medical need.  Chavez claims that, in response to his May 25 complaint, he was given a June 1 appointment with Dr. Bailey, but that the procedure that occurred during that appointment was "retributory" and "maliciously sadistic."  Chavez believes that the procedure was performed sadistically in retaliation for his filing of the complaint against Dr. Bailey.

According to defendants, Chavez was seen in the dental clinic on June 1 for his scheduled appointment with Dr. Bailey, with Ms. Givens serving as the chairside assistant.  Dr. Bailey performed an examination and took an x-ray of Chavez's tooth #14.  The x-ray confirmed that Chavez had advanced periodontal disease.  According to Dr. Bailey, the x-rays were shown to Chavez and discussed with him at length.  (Bailey Decl. ¶ 10.)  Dr. Bailey recommended that the tooth be extracted on that date, and Chavez agreed.  Chavez then reviewed and endorsed the consent form.

According to Dr. Bailey, he administered local anesthesia and the dosing and administration was within the normal limits.  He then extracted the tooth without any difficulty whatsoever, as it was extremely loose.  Dr. Bailey described the procedure as "straightforward

and unremarkable." (Bailey Decl. ¶ 14; Givens Decl. ¶ 9.)  After extraction, Dr. Bailey

examined the site and noted an absence of any abnormalities or excessive bleeding.  Givens then

applied pressure gauze to the extraction site.  Chavez did not appear to be in any discomfort after

the extraction, but he was prescribed pain medication for any lingering symptoms.  (Bailey Decl.

¶¶ 15–16.)

　　　Chavez's complaint paints a different picture of what occurred on June 1.  His complaint

first alleges that he heard the "sound of crushing eggshells" during the extraction itself and that

Dr. Bailey bent and dragged the extracted tooth inwardly.  He states that Dr. Bailey then very

quickly left Chavez's side and went over to his workstation, which was behind plaintiff.  At that

time, plaintiff heard Dr. Bailey and Givens "in the background handling instruments" and "heard

at least twice the distinct sound of a pressure ply snapping something apart."  He states that as he

waited for Givens to return to his side to allow him to rinse and place gauze at the extraction site,

Bailey reappeared with instruments in each hand and "proceeded to insert back into plaintiff's

open gums what plaintiff believes to [have] been a fragment of bone that was broken and

extracted with plaintiff's tooth."  Chavez then received gauze from Givens.  (Compl. 10–12.)

　　　In several documents submitted after he was able to view the video of the procedure,

Chavez pinpoints where in the video he believes that Dr. Bailey implanted the tooth fragments,

and also adds that the video shows the "incriminating" evidence and a "chilling" and "revealing"

twist of the wrist that occurs during the extraction itself.[5]  (Dkt. No. 52 at 3; *see also* Dkt. No.

51-1 at 6–7, Dkt. Nos. 52, 52-1, and 56 (Chavez's offering his version of what the video depicts

as well as the alleged tampering).)

　　　Chavez further alleges that the video conflicts with statements made by Bailey during the

---

[5] He does not explain why the motion of Dr. Bailey's wrist is "chilling" or offer any competent evidence that such twisting is an improper or negligent technique for removing a tooth.

internal investigation because it shows Dr. Bailey returning to the injured site and, according to Chavez, Dr. Bailey repeatedly denied returning to the injured site during the internal investigation.  (Dkt. No. 52-1 at 2 (citing Plaintiff's Compl. attachments #s 3, 4, 8, and 9).)  The denials are based on statements in responses to grievances such as: "[U]pon completion of the procedure [Dr. Bailey] left the chairside area and did not return," (Dkt. No. 1-1 at 5); and "After completing the procedure, Dr. Bailey left the treatment area and went to the lab to scrub the instruments used . . . Dr. Bailey did not return to treat you in any manner."  (Dkt. No. 1-1 at 12).  These statements are not contradicted by the video, unless the "procedure," is viewed *only* as the initial extraction and not Dr. Bailey's subsequent examination of Chavez's mouth before gauze was placed in the area.

The video itself reflects the entire course of the appointment, from the time Chavez is brought into the room.  It shows him signing the consent form and shows Dr. Bailey twice moving toward Chavez with a needle and then presumably administering the local anesthetic.  The remaining video of the procedure shows Dr. Bailey returning to Chavez's side on three occasions (at approximately time-stamps 14:03:39, 14:04:16, and 14:04:53), each time with an instrument in hand. Nothing in the video shows Dr. Bailey picking up any portion of a foreign object or part of a tooth and reinserting it.  And despite Chavez's reference to a "shadowy instrument" in Dr. Chavez's right hand at 14:04:52, the amount of that instrument visible is consistent with the visibility of other instruments in the video.  In short, while the nature of the Rapid Eye video does contain some minor gaps and it does not show what is happening inside Chavez's mouth, nothing in the video supports Chavez's assertion that any portion of his tooth or object was re-implanted.  Instead, the video reflects—consistent with Dr. Bailey's testimony of the entire procedure—that he extracted the tooth and "[t]hereafter, examined the extraction site" before Givens applied gauze.

On June 5, 2018, Chavez submitted an offender request for a follow-up appointment. The following day, he filed an informal complaint alleging that Dr. Bailey failed to treat him and caused an infection due to an "implanted object."  (Bailey Decl. ¶ 20.)  On June 7, Givens scheduled him for a follow-up appointment on June 13, 2018.  When Chavez appeared for the appointment, he complained of a sharp painful object at the extraction site.  He accused Dr. Bailey of "re-implanting" a piece of "broken bone" or "metal object" at the extraction site. (Bailey Dec. ¶ 23.)  Although Dr. Bailey attempted to examine Chavez and treat him on that date, the appointment was discontinued because of Chavez's agitated behavior and allegations. (*Id.* ¶ 24.)  Instead, Dr. Bailey referred him to Dr. Moore.

Dr. Moore saw Chavez on June 26, 2018, and evaluated the area around his extraction, while Ms. Givens acted as a chairside assistant during the appointment.  Dr. Moore examined the extraction site, noted that tooth #14 had been appropriately extracted, and noted an absence of foreign objects or implantations at the site.  The site was healing properly.  (Moore Decl. ¶¶ 7–8.)

Moore found, however, a minor bone splinter in the area, which is a common post-operative occurrence, according to Dr. Moore.  (Moore Decl. ¶¶ 9–10.)  With Chavez's consent, Dr. Moore smoothed the area and then applied one stitch to assist in healing.  (Moore Decl. ¶ 9; *see also* Dkt. No. 1-1 at 15 (Dr. Moore's response to an informal complaint from Chavez in which he describes the procedure.)  At the end of that appointment, Chavez did not appear to be in any discomfort, but he was prescribed pain medication for any lingering symptoms.[6]  Again, Chavez contends that Dr. Moore did not merely file or smooth the area, but in fact removed two

---

[6]  Thereafter, in July 2018, Dr. Moore received a "warning" letter from Chavez, stating that although Dr. Moore had "done no harm," he should distance himself from Dr. Bailey.

large pieces of bone from his mouth at that time.[7]  He bases this on his own lay opinion that,

based on his subsequent evaluation of the site, "it was obvious to" him that "no bony splinters or

a minor filing of bone edges could have produced that damage."  (Compl. 17.)

### B.  Facts Relevant to Third and Fourth Claims: Alleged Tampering of X-Rays, Video, or other Evidence, and Improper Policy

As noted, Chavez contends that there was "an active cover-up" by defendants Ravizee,

Fleming, and Harris to suppress or "possibly destroy" evidence of the alleged June 1 attack by

Bailey.  (Opp'n to VDOC Defs.' Mot. Summ. J. 2–3, Dkt. No. 46.)  He claims that defendants

Manis and Herrick "tacitly authorized the unconstitutional conduct of the medical defendants"

when they found Chavez's grievances unfounded.  (*Id.* at 3.)  Lastly, he claims that defendants

Stanford and Scott were named as "possible defendants" because defendant Manis referenced a

supposed policy that said Dr. Bailey did not have to examine plaintiff upon receiving his

emergency grievance.  To the extent such a "vague, ghost policy" existed, he thought Stanford

and Scott were proper defendants.  As noted, though, he has asked to withdraw his claims against

Scott and Stanford.

With regard to tampering by Dr. Moore and Givens, Chavez speculates that he saw a

different x-ray machine on his second appointment, and he claims that he heard two different x

rays that were taken over the same x-ray plate.  He states that he "believes" that Moore and

Givens were "using . . . advance[d] hardware with a more sophisticate[d] software program" to

take a "double-shadowed x-ray."  The relevance of these allegations is not clear from the

complaint, and the x-ray is not part of the record.  In any event, all three of the Medical

Defendants aver that WRSP has only one radiography system.  (Bailey Decl. ¶ 18, Moore Decl.

¶ 6; Givens Decl. ¶ 14.)  Thus, Chavez's naked speculation concerning "double-shadowed" x-

---

[7]  Only one page of his dental chart was provided by Chavez, and neither he nor defendants filed the notes from the June 26, 2018 appointment.

rays is disputed by the persons with actual knowledge about the radiography system.

With regard to Dr. Moore, Chavez says he was told that Dr. Moore would be "scratching on a bone for two seconds" and removing "two large fragments of bone" from the extraction site. Chavez then states that the removal of those fragments were not recorded as part of the procedure performed by Dr. Moore, as part of the cover-up of Dr. Bailey's misdeeds. (Compl. 16.) He also states that in evaluating the site afterward, "it was obvious to" him that "no bony splinters or a minor filing of bone edges could have produced that damage." (*Id.* at 17.)

A primary focus of Chavez's third claim and tampering allegations is the Rapid Eye video of the June 1 procedure. Indeed, over the course of the case, he has devoted a number of documents, motions, and even a separate declaration to the issue. In earlier filings, including his opposition to the summary judgment motion, Chavez claimed he was not shown the video and he even sought to be permitted to view the video before a ruling on the summary judgment motion. (*See* Opp'n to VDOC Defs.' Mot. Summ. J. 2, 4–5, 8; *see also* Dkt. Nos. 43, 44.).)

He subsequently was shown the video, and he has signed a form acknowledging that fact. (*See* Dkt. Nos. 45, 45-1.) Then, he pivoted to claims that someone had tampered with the video. (Dkt. Nos. 52, 53.) He also states in his complaint that defendant Harris—one of the investigators who looked into his complaints about June 1—told Chavez that if there were surveillance video, Harris would have to edit it into still frames because the file would otherwise be too big. (Compl. 20.) Based on that, Chavez insists that the video has been edited or that someone tampered with it. His conclusory tampering allegations, however, are refuted by the record. First of all, as counsel has verified, "[t]o the best of defense counsels' knowledge, the video footage . . . has not been altered, edited, or tampered with in any way." (Dkt. No. 55.) The declaration of Fleming also states that the evidence has not been tampered with, altered, or edited in any way. (Fleming Aff., Dkt. No. 32; *see also* Dkt. No. 36 (DVD containing video).)

Counsel also has represented that, based on her extensive experience in reviewing segments of Rapid Eye video surveillance and her repeated reviews of the video footage in this case, which she specifically reviewed "for any evidence of editing, tampering, or malfunction," she did not see any such evidence.  (Dkt. No. 55 at 2.)  Based on a review of the video, I am constrained to agree: the video shows no obvious evidence of tampering and its quality, visibility, and presentation are similar and comparable to other VDOC Rapid Eye footage in other cases.  I see no evidence on which a reasonable jury could reach a different conclusion. Although Chavez points to "gaps" in the recording, those are the natural consequence of the way in which Rapid Eye video is recorded.  Specifically, it is not a continuous recording of events, but a series of still images in rapid succession, with a certain number of images taken per second. In short, Chavez's allegations of tampering or editing are unsupported by any competent evidence.

As noted, the fourth claim does not contain many factual allegations.  It simply alleges that his claims were not properly investigated and that VDOC officials maintain improper dental procedures.  The claim appears to be focused on statements made in response to his grievance, in which Manis and/or Herrick stated that defendant Bailey did not violate policy in refusing to examine or treat plaintiff on May 8, 2018, in response to his emergency grievance.  Chavez appears to be arguing that their conclusion that there was not a violation of policy was wrong and that they are misapplying Operating Procedure 720.6, governing Offender Dental Services.

## II.   DISCUSSION

### A.  Summary Judgment Standard

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists only where the record, taken as a whole, could lead a

reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, I must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (quoting *Anderson*, 477 U.S. at 249–50).

**B. VDOC Defendants' Motion**

The VDOC Defendants move for summary judgment on a number of grounds, which include arguments that Chavez failed to exhaust certain claims and that they are entitled to qualified immunity.[8] In his opposition, Chavez asserts—in general terms—that defendants prevented him from fully exhausting his claims and that he in fact exhausted all available remedies. (Opp'n to VDOC Defs.' Mot. Summ. J. 4–6.) Upon a review of the claims and the evidence in the record, I conclude that it is not necessary to reach the issues of exhaustion or qualified immunity. Based on the record, the VDOC Defendants are entitled to summary judgment on the merits of Chavez's claims for the basic reasons argued in their motion.

---

[8] For example, the VDOC Defendants argue that Chavez has no constitutional right to participate in the grievance procedure and any failure on the part of defendants to adequately respond to his grievances fails to state a claim, which limits claims against Ravizee, Manis, and Herrick. With regard to the allegations against Fleming and Harris, they note that the allegations that they failed to preserve video are patently false, as the video is part of the record.

**1. Defendants Ravizee, Manis, and Herrick**

All of the claims against Ravizee, Manis, and Herrick stem from actions taken, or decisions made, in the course of addressing Chavez's grievances. These claims fail as a matter of law. The Fourth Circuit held in *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994), and reiterated more recently in *Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533 (4th Cir. 2017), that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Id.* at 541; *see Adams*, 40 F.3d at 75 ("The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Relying on *Adams*, district courts, including this one, have repeatedly held that a prison official's failure to comply with a grievance procedure is not actionable under § 1983. *E.g.*, *Brown v. Va. Dep't of Corrs.*, No. 6:07-CV-33, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) ("[T]here is no liability under § 1983 for a prison administrator's response to a grievance or appeal."); *Oliver v. Gray*, No. 7:09-CV-00004, 2009 WL 366150, at *2 (W.D. Va. Feb. 12, 2009), *aff'd*, 360 F. App'x 417 (4th Cir. 2010) ("Because a state grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983."). Thus, summary judgment in these defendants' favor is appropriate.

In his opposition, Chavez contends that these defendants' failure to take any action against Dr. Bailey as a result of his "assault" means that they, too, should be held liable for an Eighth Amendment violation. (Opp'n to VDOC Defs.' Mot. Summ. J. 7–8.) For support he relies on *King v. Blankenship*, 636 F.2d 70, 74 (4th Cir. 1980), and *Hafner v. Brown*, 983 F.2d 570 (4th Cir. 1992).[9] Those cases do not stand for the proposition that a prison administrator can be held liable for an assault that he was not present for and did not participate in, merely because he denies a prisoner's grievance about that assault. *Hafner* recognized the possibility that a

---

[9] Plaintiff incorrectly cited *Hafner* as 989 F.2d 570.

conspiracy could exist where the conspiracy was based on one arrest, one place, and one time, and where the officer who supposedly "acquiesced" in the behavior was present during the wrongdoing.  983 F.2d at 577–78.  This type of liability, commonly referred to as "bystander" liability, allows an officer to be held liable if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."  *Randall v. Prince George's Cty.*, 302 F.3d 188, 204 (4th Cir. 2002).  The same liability does not apply to a prison official who was not present when the excessive force occurred, but simply denies a grievance afterward that complains of the excessive force.  As this Court has explained, "[r]uling against a prisoner on an administrative complaint" does not constitute a constitutional violation.  *Brown v. Va. Dep't of Corrs.*, No. 6:07-CV-00033, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) (citation omitted); *see also George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007) ("A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

Similarly, the facts in the record do not disclose any basis for imputing supervisory liability against any VDOC defendant under § 1983.  To establish such a claim against these defendants, who were not involved in the June 1 incident, Chavez would have to prove the following three elements:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotations omitted).  Chavez cannot meet this standard.  Even if the VDOC employees were "supervisors" of Dr. Bailey's and even if

they ignored or turned a blind eye to his misconduct on June 1, as Chavez claims, this does not establish supervisory liability.  First, there is no evidence to support that any of the VDOC Defendants had any knowledge *before* the June 1 "attack" that Dr. Bailey posed an unreasonable risk of constitutional injury.  Accordingly, there is nothing to causally link any inaction by the VDOC Defendants to Chavez's injury on June 1.  Nor does Chavez allege that he was injured at any other time by Dr. Bailey.  Thus, to the extent that he purports to assert Eighth Amendment claims against the VDOC Defendants, his claims fail and defendants are entitled to summary judgment.

Lastly, Chavez's vague claims about VDOC policies in Count 4 against Manis or Herrick do not state a constitutional claim.  A state's failure to adhere to its own procedures and regulations is not a federal due process issue nor is it actionable under § 1983.  *See Riccio v. Cty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990); *see also Weller v. Dep't of Social Servs.*, 901 F.2d 387, 392 (4th Cir. 1990) ("[I]t is well settled that violations of state law cannot provide the basis for a due process claim.").

### 2.  Defendants Fleming and Harris

The claims against Fleming and Harris stem from plaintiff's dissatisfaction of their investigation into his complaint and are primarily based on their purported failure to review and/or preserve the video footage of his June 1, 2018.  As to the failure to review the footage or conduct additional investigation, this is a claim arising from purported deficiencies in the internal complaint process and does not give rise to a constitutional claim, for the reasons already discussed.

In any event, that video footage *was* preserved and is part of the record; thus, any claims based on the alleged failure to preserve the video must be denied.  Moreover, as noted in the factual background concerning the video, there is no evidence in the record to support that the

14

video was tampered with.  Therefore Fleming and Harris also are entitled to summary judgment in their favor as to all of the claims arising from the alleged "tampering" of evidence.

For the foregoing reasons, I will grant the VDOC Defendants' motion for summary judgment.

## C. Medical Defendants' Motion

In their motion, the Medical Defendants liberally construe Chavez's complaint as stating Eighth Amendment claims based on the delay and denial of medical treatment, a retaliation claim against Dr. Bailey and Ms. Givens, and a conspiracy claim.[10] I will address each of these in turn.

### 1. Eighth Amendment Claims

Chavez's primary claims against the Medical Defendants allege a violation of the Eighth Amendment. "It is beyond debate that a prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019).  To demonstrate deliberate indifference, an inmate must show that (1) he has a medical condition that has been "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" and (2) the defendant "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them."  *Id.* at 356–57.  The first component is an objective inquiry and the second is subjective.  *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017).  The subjective component requires "subjective recklessness" in the face of the serious medical condition.  *Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994).  "True subjective recklessness requires knowledge both of the general

---

[10]  Chavez also references the Fourth and Fourteenth Amendments in his second claim, but the factual bases for a claim under either of these amendments is unclear.  Thus, any claims based on violations of these amendments are dismissed.

risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). Importantly, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright*, 766 F.2d at 849.

Chavez asserts two separate Eighth Amendment claims: the first is the alleged delay in medical treatment; the second is the treatment he received at his June 1 appointment from Dr. Bailey and thereafter. For both of those claims, I will assume—without deciding—that tooth pain resulting from advanced periodontal disease constitutes a "serious medical condition" for Eighth Amendment purposes. *See Formica v. Aylor*, 739 F. App'x 745, 756 (4th Cir. 2018) ("[A] 'tooth cavity is a degenerative condition, and if it is left untreated indefinitely, it is likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction,' and 'presents a serious medical need.'") (quoting *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000)).

The Fourth Circuit has explained the standard to be applied where treatment has been delayed, as opposed to denied:

> Where a deliberate indifference claim is predicated on a delay in medical care, we have ruled that there is no Eighth Amendment violation unless "the delay *results* in some substantial harm to the patient," such as a "marked" exacerbation of the prisoner's medical condition or "frequent complaints of severe pain." *See Webb v. Hamidullah*, 281 F. App'x 159, 166–67 (4th Cir. 2008) (emphasis added); *see also Sharpe v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." (internal quotation marks omitted)).

*Formica*, 739 F. App'x at 755 (citations omitted). Here, Chavez has provided his own testimony that he was in significant pain as a result of the delay in treatment, and so I treat the first element of his claim as satisfied, for purposes of summary judgment.

Nonetheless, the undisputed facts do not show that any of the Medical Defendants had the requisite actual knowledge of his medical needs and the risk of delay, and nevertheless disregarded them.  Put differently, the facts establish that the defendants were not deliberately indifferent to Chavez's condition.

### a. Delay in initial treatment

As to a delay in treatment, there is no evidence in the record that Moore had any knowledge that Chavez was experiencing pain or was not being treated for any tooth pain. Moore states in his declaration that his June 26, 2018 treatment of Chavez was "the only time [he has] had contact with" Chavez during Chavez's time at WRSP.  (Moore Decl. ¶ 13.)  Chavez's dental chart reflects, however, that he was seen by Dr. Paul Moore at WRSP on September 22, 2016.[11]  The notes from that date include the notation: "Consulted on #14 also need ext soon," which Chavez interprets to mean that his tooth #14 would need "extraction soon."  Based on this, Chavez claims that there was a significant delay between September 2016 and May 2018 in performing the extraction that Dr. Moore had said would be necessary "soon."

As an initial matter, these allegations do not appear in Chavez's complaint.  Instead, based on the allegations in his complaint, his claim that Moore denied or delayed him treatment appears to be based on the fact that Moore "refused" to see him on May 15, 2018.  Regardless, Chavez has not shown that Moore—or anyone else—was deliberately indifferent to his dental needs during the period of September 2016 to May 2018.  It does appear that he received no dental treatment during that time; the next notation in his dental chart after September 2016 is a reference to his emergency grievance on May 8, 2018.  But critically, the record contains no

---

[11]  The Medical Defendants did not file a reply to Chavez's opposition, and so no explanation for the error in Dr. Moore's testimony has been provided, nor does the defendants' summary judgment motion address directly any purported "delay" between September 2016 and May 2018.

evidence whatsoever that Chavez complained to anyone about tooth pain or sought any dental treatment during that period.  While Chavez may have been waiting patiently for an extraction to occur, as he claims, he did nothing before he filed his May 8 emergency grievance to make defendants aware that one was needed urgently or that the failure to have one was causing him any pain.  Moreover, the dental policy itself identifies "extractions" as being part of "routine dental treatment."  (Dkt. No. 51-3 at 4.)  Thus, there is no evidence that any of the Medical Defendants knew that Chavez had a "serious medical need" between September 2016 and May 2018 that they failed to address.

The record also does not support any contention that defendants were deliberately indifferent as to the period between May 8, when Chavez first filed his emergency grievance and June 1, when he was seen by Dr. Bailey and the extraction was performed.[12]

First of all, the same day that Chavez filed his emergency grievance and Dr. Bailey was first made aware of Chavez's complaints of pain, he reviewed his dental records and prescribed him a ten-day course of pain medicine and antibiotics.  Chavez's disagreement with that treatment, like his contention that it was ineffective, is insufficient to establish a constitutional violation.  *See Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (finding that a prisoner's claim "is essentially a disagreement between an inmate and a physician over the inmate's proper medical care, and we consistently have found such disagreements to fall short of showing deliberate indifference"); *Goodman v. Runion*, 676 F. App'x 156, 160 (4th Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (reasoning that a prisoner's complaint about the

---

[12]  Chavez argues that defendants may not rely on his June 1, 2018 appointment to show that they provided care, because he alleges that the June 1 appointment was not dental treatment, but a sadistic attack.  (*See* Opp'n 7–8.)  As discussed *infra*, however, the court concludes that defendants are entitled to summary judgment as to this claim.  It is undisputed that on June 1, Chavez's tooth was extracted.  He may believe that was done negligently, because of the resulting bony splinters, but it is undisputed that Dr. Bailey provided treatment for his tooth pain.  Moreover, as discussed in addressing his claim concerning the "attack," there is no evidence from which a jury could reasonably conclude that Dr. Bailey's treatment of him on June 1 was a "sadistic attack" or that he purposefully implanted foreign objects at the site of the extraction.

results obtained does not equate to deliberate indifference, even if the medical provider was negligent). Thus, although Chavez claims that merely prescribing pain medication and antibiotics was neither proper nor effective, that is not the equivalent of his complaints being ignored.[13] *See id.*

As to the period between May 8 and May 25, when Chavez next complained, defendants' conduct did not amount to deliberate indifference. Chavez's complaint makes allegations of continued pain during the May timeframe. In viewing the evidence in Chavez's favor, I therefore credit that Chavez continued to experience pain while waiting for his appointment. Critically, though, he does not allege that he continued to complain about pain or that Dr. Bailey, Dr. Moore, or Givens were ever made aware that he continued to experience significant pain. Indeed, between May 8 and May 25, when plaintiff filed his informal complaint, he does not state that he complained to anyone about having continued pain or that he sought additional treatment during that time. Thus, until he complained on May 25, they might well have believed that the pain medication and antibiotics had solved the problem.

None of the Medical Defendants address in their affidavits whether there was a May 15 appointment scheduled that did not occur, whether because Dr. Moore was too busy on that date or because Dr. Moore refused to see him. But Chavez so alleges and there are documents to support his assertion. (*See* Dkt. No. 1-1 at 15–19.) Thus, viewing the evidence in the light most favorable to Chavez, I treat that assertion as true for purposes of this opinion. Nonetheless, as of May 15, Chavez was still receiving both pain medicine and antibiotics, and he had made no additional complaints about being in pain or needing care.

---

[13] Chavez insists that the way his emergency grievance was handled was in violation of VDOC's Operating Procedure 720.6, which governs the provision of dental treatment. Defendants disagree that it violated that policy, but even if it did, the standard for deliberate indifference is not contingent upon compliance with a particular prison policy. Thus, a violation of a policy alone does not give rise to a constitutional violation. *Cf. Riccio*, 907 F.2d at 1469.

When he complained the second time—on May 25—he was seen one week later, a very slight delay in treatment. Notably, then, his toothache was not "left untreated indefinitely," like the plaintiff's cavity was in *Formica*. 739 F. App'x at 756. Rather, there was immediate action taken on May 8 to address his pain (the prescription of painkillers and antibiotics), and he was seen approximately three weeks later for a full dental examination, at which point his tooth was extracted. Such a minor delay, particularly given Chavez's absence of additional complaints for the first two weeks and several days of that period, does not rise to the level of deliberate indifference. There is simply no evidence from which jurors could find that defendants knew that he continued to experience significant pain. And they responded fairly promptly when he did complain again. After his May 25 complaint, he was then seen one week later, on June 1. Courts faced with similar or longer delays have held they are insufficient to state an Eighth Amendment claim. *See, e.g.*, *Smith v. Rowe*, No. CV CCB-18-3195, 2020 WL 1332005, at *2, 5 (D. Md. Mar. 23, 2020) (finding no Eighth Amendment violation where plaintiff was erroneously denied his dental appointment on October 13, he filed a grievance on October 15, and he was seen by the dentist on November 4 and given pain medication and consented to an extraction at that time).

Moreover, the delay in this case was significantly shorter than the delay that the Fourth Circuit concluded could support an Eighth Amendment claim in *Formica*. There, a nurse who was closely involved in the plaintiff's dental treatment process received a complaint from him as early as February 7, 2014, about a cavity in his molar. Thereafter, she continued to deny him treatment unless he would make a copay, despite his repeated complaints. This lasted through October 2014—a period of eight months. The Fourth Circuit noted that "the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.* at 758 (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). It then concluded that

the eight-month delay was not tolerable.  Here, by contrast, Chavez was treated immediately with pain medications and antibiotics, and the extraction occurred less than one month after his first complaint.  That does not display the type of deliberate indifference to a toothache or tooth decay that the court held actionable in *Formica*.

To be sure, Chavez might have wanted to be seen sooner, and he clearly alleges that the treatment given on May 8 was not effective, but there is no indication that defendants knew that, at least until May 25, and he was seen one week later.  To state a constitutional claim, defendants' conduct must have been "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Milter v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  No reasonable jury could conclude that the Medical Defendants' treatment of Chavez could satisfy that standard.  They are entitled to summary judgment on the delay claim.

### b.  The June 1 procedure by Dr. Bailey

With regard to the June 1 dental procedure itself, Chavez offers his own layperson view, based on hunches and suspicions, that something sinister occurred during that appointment.  But the medical record describing the procedure, the affidavits of Dr. Bailey, Dr. Moore, and Ms. Givens, and the DVD of the procedure itself either contradict or do not support his theory. Chavez attempts to counter this significant body of evidence not with medical testimony, but by his own assertions about what he *suspects* may have been happening based primarily on what he heard, assertions that are largely belied by the Rapid Eye video and by his dental record.  He simply has not presented evidence from which a reasonable jury could find that Dr. Bailey purposefully re-implanted anything at the extraction site.  Certainly, he has provided no medical testimony to that effect.

Furthermore, both defendant dentists have offered their opinion that bony splinters

sometimes occur as the result of extractions, and the consent form that Chavez signed before the extraction likewise noted this possibility.  (Dkt. No. 41-1 at 6.)  The mere fact that there was a negative outcome after the procedure does not mean that Dr. Bailey implanted something in Chavez's mouth.  In short, Chavez has not any offered any competent evidence to counter the testimony of the Medical Defendants and the video, such that a jury could conclude that there was an assault on June 1.

Lastly, to the extent his claims are not based on suspicions, but on things he actually observed, he is not qualified to offer the opinions and interpretations of those events that he does.[14]  The most blatant example of this is his contention that he was given an unusually large dose of the anesthetic novocain.  He offers no basis, though, on which he could know what a "usual" dose is.

For all of these reasons, Dr. Bailey and Givens are entitled to summary judgment on the alleged assault claim.

### 2.  Retaliation Claim

To the extent Chavez's claims that the procedure performed on June 1 was retaliatory, Dr. Bailey and Givens are likewise entitled to summary judgment.  To succeed on his § 1983 retaliation claim, Chavez must establish that (1) he engaged in protected First Amendment activity, (2) "the alleged retaliatory action adversely affected his protected speech," and (3) a but-for causal relationship existed between the protected activity and the retaliatory act.  *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015).  For the reasons already discussed, Chavez cannot show that any retaliatory action was taken against him, because the record disproves his

---

[14]  Chavez also complains that Dr. Bailey's affidavit erroneously attributed the problems with his teeth to periodontal disease.  (Dkt. No. 51-1 at 4–5.)  He attaches documents from 1990 which showed that he had a gunshot wound to his face (Dkt. No. 51-3 at 8–9), and he claims that any abnormalities in his left "jaw bone" were caused by that injury and subsequent surgeries.  (Dkt. No. 51-1 at 4–5.)  His disagreement with Bailey over the underlying cause of his dental problems, however, is irrelevant to his constitutional claims.

conclusory allegation that the dental procedure involved some type of "reimplantation" of material.  In any event, the evidence in the record also plainly fails to put forth evidence to support the third element.

To establish the third element, a plaintiff must show that the protected activity was the but-for cause of the adverse action alleged.  *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015); *Gregg-El v. Doe*, 746 F. App'x 274, 275 & n.2 (4th Cir. Jan. 3, 2019) (citing to *Foster* in addressing the causation standard in the context of a prisoner's retaliation claim).  An inmate experiencing an adverse action shortly after a defendant learns that the prisoner engaged in a protected activity may create an inference of causation, but, generally, mere temporal proximity is "simply too slender a reed on which to rest a Section 1983 retaliatory [ ] claim." *Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993).  Here, Chavez has shown that the dental procedure was performed days after he filed his complaint against Dr. Bailey, but the totality of the record fails to establish any other, let alone sufficient facts to satisfy the "rigorous" but-for standard of causation.  *See Raub*, 785 F.3d at 885 ("[O]ur causal requirement is rigorous." (internal quotations and citations omitted)).

In particular, Chavez has not alleged any facts to support a reasonable inference that either Dr .Bailey or Givens—even if they had taken some retaliatory action—did so because of Chavez's complaint.  *See Adams*, 40 F.3d at 74–75 (summarily dismissing retaliation claim as insufficient because it consisted of merely conclusory allegations and no facts to show retaliatory motivation); *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (noting that courts must treat an inmate's claim of retaliation by prison officials "with skepticism").  For these reasons, they are entitled to summary judgment on the retaliation claim.

### 3.  Conspiracy Claim

The only other allegations against the Medical Defendants are based on Chavez's

assertion that Dr. Moore and Givens somehow used new or sophisticated software or hardware to falsify x-rays. First of all, Dr. Moore and Givens have denied the allegations that new or different software or hardware existed at the time of Chavez's second appointment and have denied that they tampered with or otherwise manipulated the x-rays. Critically, both of them have personal knowledge about the equipment used in the dental office and its capabilities, unlike Chavez, who simply observed the equipment from across the room. As to the manipulation, then, he does not present facts from which a reasonable jury could find in his favor.

In any event, the Medical Defendants' motion also points out the absence of any facts to show that the defendants shared a "unity of purpose or common design" and had a meeting of the minds among the defendants, as required to state a conspiracy claim. (Dkt. No. 41 at 13–14) (citing *Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1007 (4th Cir. 1987); *Murdaugh Volkswagen v. First Nat'l Bank*, 639 F.2d 1073, 1075–76 (4th Cir. 1981)). Chavez has not come forward with any facts that show an agreement, but instead just makes conclusory allegations of conspiracy, claiming that the x-ray images were somehow manipulated to cover up Dr. Bailey's alleged misdeeds. These conclusory allegations of conspiracy are insufficient to survive summary judgment. *See Tate v.* v. *Bondurant*, 966 F.2d 1444, 1992 WL 132850, at *1 (4th Cir. 1992) (unpublished table decision) (affirming district court's dismissal of conspiracy claim where plaintiff made conclusory allegations unsupported by facts showing an agreement between or among defendants); *Shelton v. Angelone*, 148 F. Supp. 2d 670, 679–80 (W.D. Va. 2001) (dismissing conspiracy claim where prisoner-plaintiff failed to plead facts showing that defendants agreed or had a meeting of the minds so as to violate his constitutional rights).

## III.  CONCLUSION

For the reasons stated, I will grant defendants' motions for summary judgment.   An appropriate order will be entered.

**ENTER**: This 27th day of May, 2020.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

25